UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

| | | |
|---|---|---|
| DOUGLAS WICKSTROM, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-591 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| EXPERIAN, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      This is a civil action brought *pro se* by plaintiff under the Fair Credit Reporting Act. 15 U.S.C. § 1681o. Defendant Experian is a credit reporting agency. Plaintiff alleges that the defendant violated 15 U.S.C. § 1681i by failing to conduct a "reasonable reinvestigation" regarding a debt owed on an American Express credit card account which plaintiff disputed.

      The parties have voluntarily consented under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure to have a United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment. The matter is now before the court on defendant's motion for summary judgment. (docket # 24). Plaintiff has filed a response (docket #s 43, 44), and defendant's motion is ready for decision. For the reasons stated herein, defendant's motion for summary judgment will be granted and judgment will be entered in defendant's favor on all plaintiff's claims.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence

sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

**Facts**

The following facts are beyond genuine issue.

1. Plaintiff's Dispute with American Express

This lawsuit arises from a debt of approximately $24,000 owed on an American Express credit card account. On January 22, 2008, plaintiff Douglas Wickstrom signed an application for an AMEX SimplyCash Business Credit Card. (Ex 2; Plf. Dep. at 50). He supplied his social security number, home address, date of birth, annual income, and monthly mortgage or rent payment. Further, Mr. Wickstrom provided the company name of Narconon-Stonehawk (Narconon), and gave a tax identification number, phone number, and address. Plaintiff related that Narconon was a service business, and stated its annual revenue and the number of years it had been in business. (Ex. 2).

Plaintiff testified that he began serving as Narconon's CFO and vice-president on January 2, 2008. (Plf. Dep. at 21). American Express opened the credit card account in February 2008. (Plf. Dep. at 43). The underlying credit card agreement states as follows:

> We want to remind you that this account is for business use. Both you and the company are responsible for the charges on this account.

* * *

> Each use of the card on the account constitutes a loan for business or commercial purposes to the person named on the card and the company by us. You are accountable for any reimbursements and agree to remit such funds to us promptly.
>
> * * *
>
> The company and the basic card member are jointly and individually liable for all charges owed on the card account. We may enforce any right or remedy we may have against the company, the basic card member, or any additional card members under this agreement without affecting our other rights or remedies.

(Ex. 16). American Express sent the bills for charges made on this account to plaintiff at his home address in Bellaire, Michigan. (Ex. 3; Plf. Dep. at 55-56).

Plaintiff stopped working for Narconon in June 2008, and the credit card account went delinquent that month. Plaintiff reported that he stopped working for Narconon because the company had "bad financial problems." (Plf. Dep. at 13). Plaintiff and his son started a new corporation in June 2008. The new corporation, "A Forever Recovery," was in the same business as Narconon and it used the same Battle Creek address. (Ex. 2; Plf. Dep. at 16-17, 21, 23, 77-78, 89-90).

The July 6, 2008 statement from American Express indicated that payment on the Narconon credit card account was past due. American Express reported the delinquent account to Experian and other credit reporting agencies. Plaintiff sued American Express in state court, alleging that it filed a wrongful negative report with credit reporting agencies. (Plf. Dep. at 61-62). American Express filed a counterclaim against plaintiff and a third-party complaint against Narconon for the more than $23,936.74 owed on the account. (*Id.* at 62-63).

On September 30, 2009, American Express and plaintiff entered into a settlement agreement in which plaintiff and Narconon agreed to pay American Express approximately half of the total amount it was owed on the account:

> (a) Wickstrom and Narconon agree to pay, and American Express agrees to accept, in settlement of the Amount Claimed, the sum of Twelve Thousand Dollars and 00/100 ($12,000.00) (the "Settlement Sum") as follows:
>
> (b) American Express has previously received from Wickstrom a check in the amount of Five Thousand ($5,000.00) which will be credited towards the Settlement Sum.
>
> (c) By December 15, 2009, Wickstrom and Narconon agree to pay Jaffe & Asher, LLP, as attorneys for American Express, Seven Thousand Dollars ($7000.00), representing the balance of the Settlement Sum.

(Ex. 4; *see* Plf. Dep. at 64-66). Simultaneously with the execution of the settlement agreement, counsel for American Express and Wickstrom executed a stipulation for dismissal with prejudice of the action filed by Wickstrom against American Express. Further, the settlement agreement provided that, "Upon payment of the full Settlement Sum in accordance with this Agreement, counsel for American Express and Wickstrom and Narconon shall execute the Stipulation of the Dismissal of the Counterclaim and Third party Action . . . ." (Ex. 4).

### 2. Plaintiff's Dispute with Experian Regarding His Credit Report

Plaintiff discovered in December 2008 that an Experian credit report indicated that he owed the debt on the American Express credit card account. (Plf. Dep. at 28, 58). Plaintiff notified Experian that he was disputing that he owed this debt. (Ex. 6; Plf. Dep at 31-32). Plaintiff identified only one dispute. (Ex. 6). He claimed it was not his American Express account. In response to the question, "Who does it belong to?," plaintiff wrote: "Narconon-Stonehawk, Inc. I was not even working for Narconon until January 2008 – Please remove [this] from my file." (*Id.*).

On December 10, 2008, Experian sent American Express an automated dispute verification form ("ACDV') notifying it that plaintiff disputed owing the debt on the account. (Ex. 7; Plf. Dep. at 33-34). American Express provided Experian with the following response: "01-account information accurate as of date reported." (Ex. 7). On December 11, 2008, Experian advised plaintiff that the disputed item had been verified as accurate. (Ex. 8).

On December 18, 2008, plaintiff wrote a letter threatening to add Experian as a defendant in his then-pending lawsuit against American Express:

> I wish to dispute the findings on my credit file concerning AMEX Account # [redacted].
>
> I did not have the adverse account they have put in my file. Have them prove this account was mine.
>
> I have turned this over to my attorney and since I was denied credit because of this entry the amount AMEX may have to pay me should be in the six figure range. If you do not remove this item from my report I will have no other alternative, but to include your company in the suit also.

(Ex. 9).

On December 30, 2008, Experian responded, "Without additional relevant information in support of this dispute, you will not receive notice again regarding this particular dispute." (Ex. 10). Further, Experian advised plaintiff that he had additional options if he continued to dispute the accuracy of the credit report:

> If you still believe the item is inaccurate, then we can add a statement of continued dispute to your personal credit report at your request, or you may wish to contact the credit grantor directly to resolve your issue. If you have additional relevant information (anything new that has occurred between you and the credit grantor or courts that should result in a change to the information appearing on your credit report, such as a letter from the creditor, a canceled check or money order, billing statement, contract name of the credit grantor, letter from the IRS, proof from a court or county reporter, proof that bankruptcy was dismissed or discharged, etc.), that was not presented when you previously disputed the information, you may mail it to us and we will reinvestigate your claim.

(Ex. 10). On January 22, 2009, plaintiff made a two-sentence, handwritten notation on the last page of Experian's December 20, 2008 response, and sent it back to Experian:

> I did not have an AMEX account in 1972. Please <u>furnish proof that their allegations are correct</u>.

(Ex. 11).

On February 3, 2009, Experian responded that it had investigated plaintiff's dispute and the result was that the account remained on plaintiff's credit report. (Ex. 12). On March 26, 2009, Experian purged the entry from plaintiff's report. (Ex. 15; Plf. Dep. at 30).

On April 14, 2009, plaintiff sued Experian in Bellaire, Michigan, in the small claims division of the 86th District Court. On June 2, 2009, he demanded that his case against Experian be removed from the court's small claims division to the general civil division. On June 26, 2009, defendant filed notice of removal, which brought the case to this court on the basis of a federal question. 28 U.S.C. § 1331. (docket # 1).

## **Discussion**

Plaintiff alleges that the defendant violated 15 U.S.C. § 1681i by failing to conduct an adequate reinvestigation regarding the debt owed on the American Express account. Section 1861i(a)(1) states as follows:

> (a) Reinvestigations of disputed information
>
> > (1) Reinvestigation required.--
> >
> > > (A) In general.--Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute,

> the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

1. <u>Debt Owed on the American Express Credit Card</u>

Plaintiff raised with Experian only one alleged inaccuracy in the credit report: the report showed that plaintiff was individually liable for the debt on the American Express credit card account that he had opened. This was a legal issue to be resolved by a court, not the credit reporting agency. "This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency such as [defendant] is neither qualified nor obligated to resolve under the FCRA." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *see Cornock v. Trans Union LLC*, 638 F. Supp.2d 158, 165 (D. N.H. 2009)(FCRA imposes no obligation on consumer reporting agencies to resolve questions that can only be resolved by a court of law.). Plaintiff did not have a right to removal of the debt from his credit report until some court declared that, despite the clear provisions of the credit card agreement (Ex. 16), plaintiff was not personally liable on the account that he opened. Defendant's refusal to remove this item from plaintiff's credit report was not a violation of the statute.

2. <u>Experian's Investigation</u>

No reasonable trier of fact could find that Experian's reinvestigation of the disputed issue was unreasonable. Section 1681i does not impose strict liability for inaccurate entries in consumer reports. The preparer is held only to a duty of reasonable care. *See Spence v. TRW, Inc.*,

92 F.3d 380, 382-83 (6th Cir. 1996); *see also Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991); *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir.1982). The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances. *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir.1982).

Defendant contacted American Express, and American Express verified that plaintiff was individually liable for the debt owed. Plaintiff's argument that defendant should have conducted a more in-depth investigation does not suffice. Further investigation by defendant would have only reinforced the strength of American Express's claim that plaintiff owed the debt on the American Express account. Plaintiff had opened the account and received the billing statements at his home address. The express terms of the credit card agreement made plaintiff liable for the debts owed on the account. Plaintiff's claim against Experian for failure to conduct a reasonable investigation is legally untenable.

3 <u>Inaccuracies</u>

Plaintiff argues that Experian's report contained inaccuracies other than the disputed issue of account ownership. Experian's report stated the wrong opening date for the account and an incorrect past-due date. Plaintiff notified defendant that there was a single issue in dispute – his claim that he was not legally liable on the account. (Ex. 4). Plaintiff's correspondence lacked sufficient clarity to provide notice to defendant that he was claiming that there were other inaccuracies and that he was demanding that they be corrected. *See Herisko v. Bank of Am.*, No. 08-56801, 2010 WL 675253 (9th Cir. 2010) (letter to credit reporting agency complaining of one

inaccuracy insufficient to place agency on notice of different purported inaccuracy). Further, any inaccuracy worked to plaintiff's substantial advantage. Collection accounts can only be retained for up to seven years from the date of delinquency. 15 U.S.C. § 1681c(a)(4). As a result of the error concerning the opening date, the American Express entry was purged from plaintiff's credit file in March of 2009. The account was actually opened in 2008. Thus, if American Express had reported the correct delinquency date, plaintiff would have retained the blemish on his credit report for several more years.

## Conclusion

For the reasons set forth herein, defendant's motion for summary judgment (docket # 24) will be granted and judgment will be entered in defendant's favor on all plaintiff's claims.


Dated: July 1, 2010        /s/ Joseph G. Scoville
                           United States Magistrate Judge